JOSEPH A. LIEBMAN
Nevada Bar No. 10125
JAROD B. PENNIMAN
Nevada Bar No. 16299
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone:  702.562.8820
Facsimile:  702.562.8821
JLiebman@BaileyKennedy.com
JPenniman@BaileyKennedy.com

MARISA RAUCHWAY
(*PRO HAC VICE ADMISSION FORTHCOMING*)
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  973.325.1500
mrauchway@csglaw.com

*Attorneys for Plaintiffs 34 Franchise Group LLC,
Fazil Malik, Frank Malik, and Noordin Jhaver*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| 34 FRANCHISE GROUP LLC, a Texas limited liability company; FAZIL MALIK, an individual; FRANK MALIK, an individual; and NOORDIN JHAVER, an individual, | Case No. |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| BC LICENSING, LLC, a Nevada limited liability company; JOSHUA HALPERN, an individual; MATTHEW SILVERMAN, an individual; SAMUEL STANOVICH, an individual; BRIAN COCHRAN, an individual; DOES I-X; ROES I-X, | **[JURY TRIAL DEMANDED]** |
| Defendants. | |

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Plaintiffs 34 Franchise Group LLC  ("34 Franchise Group"), Fazil Malik, Frank Malik, and Noordin Jhaver (collectively, "Plaintiffs"), by and through their attorneys, Bailey❖Kennedy LLP and Chiesa Shahinian & Giantomasi PC, and for their claims against Defendants BC Licensing, LLC ("BC Licensing" or "Franchisor"), Joshua Halpern ("Halpern"), Matthew Silverman ("Silverman"), Samuel Stanovich ("Stanovich") and Brian Cochran ("Cochran") (collectively, "Defendants"), state as follows:

## NATURE OF THE ACTION

1.      This is an action for damages arising from Defendants' well-orchestrated, fraudulent scheme to induce Plaintiffs to join the "Big Chicken" franchise system ("Big Chicken") and commit to investing millions of dollars to develop fifty (50) "Big Chicken" restaurant franchises in the State of Texas.

2.      As set forth more fully below, Defendants affirmatively misrepresented several material aspects of the Big Chicken franchise concept to Plaintiffs, which Plaintiffs later learned were complete fabrications.

3.      Specifically, in order to induce Plaintiffs into investing significant funds to develop and acquire the rights to develop a series of Big Chicken restaurants in Texas, and develop franchise locations in furtherance of this endeavor, Defendants made knowingly false and misleading representations to Plaintiffs, regarding, among other things:

   a.   Big Chicken's food and labor costs;

   b.   The financial performance of existing corporate-owned Big Chicken restaurants;

   c.   The involvement of Shaquille O'Neal ("O'Neal") in Big Chicken, and specifically that O'Neal, as the majority owner, was using his own money to develop and market the Big Chicken brand;

   d.   The involvement of Authentic Brands Group ("ABG"), one of the largest global branding companies, and specifically that ABG would be heavily involved in directing the marketing and promotion of the Big Chicken brand and using O'Neal's powerful brand and social media presence to massively market Big Chicken;

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

e.  That Big Chicken had complete equipment and furniture packages ready for ten restaurants, stored in a warehouse for immediate shipment; and

f.  Other related promises and misrepresentations.

4.  Upon information and belief, Defendants launched a country-wide campaign to make the same or similar false representations to other potential Big Chicken franchisees and developers to induce them into investing millions of dollars into the Big Chicken franchise based upon the same or similar fabrications and omissions made to Plaintiffs, all in furtherance of Defendants' scheme to extract large sums of money from investors based on the representation of a business that did not exist as represented.

5.  These material representations and omissions, both before and continuing well after the execution of the agreements set forth below, were critical to Plaintiffs' decision to proceed with developing Big Chicken restaurants.

6.  Accordingly, 34 Franchise Group seeks rescission of the following agreements, which it was fraudulently induced to enter into by Defendants in connection with their attempted development of said Big Chicken franchises: the Development Agreement between BC Licensing and 34 Franchise Group, dated January 28, 2022 (the "Development Agreement") and the license agreements executed pursuant thereto (the "License Agreements") (collectively, the "Agreements"). Plaintiffs also seek damages and attorneys' fees for Defendants' unlawful conduct.

**JURISDICTION AND VENUE**

7.  This Court has diversity jurisdiction to grant the relief sought herein pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00.

8.  The Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves of the laws of the State of Nevada and protections of this forum through the Agreements.

9.  Venue is properly found in the District of Nevada pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the tortious and fraudulent conduct engaged in by Defendants occurred within this District.

**THE PARTIES**

10.    34 Franchise Group is a Texas limited liability company with a principal place of business located in Houston, Texas.

11.    Fazil Malik is an individual of the age of majority and resides in the State of Texas. Fazil Malik is an owner of 34 Franchise Group.

12.    Frank Malik is an individual of the age of majority and resides in the State of Texas. Frank Malik is an owner of 34 Franchise Group.

13.    Noordin Jhaver is an individual of the age of majority and resides in the State of Texas.  Noordin Jhaver is an owner of 34 Franchise Group.

14.    Upon information and belief, BC Licensing is a Nevada limited liability company with a principal place of business located at 10845 Griffith Peak Drive, Suite 520, Las Vegas, Nevada 89135.

15.    Upon information and belief, Halpern is an individual of the age of majority and resides in the State of New Jersey. Halpern has served as the Chief Executive Officer of BC Licensing since May 2021.

16.    Upon information and belief, Silverman is an individual of the age of majority and resides in the State of Nevada. Silverman is a co-founder of the Big Chicken restaurant concept and has served as Managing Partner of JRS Hospitality. Silverman signed the Agreements with 34 Franchise Group on behalf of BC Licensing.

17.    Upon information and belief, Stanovich is an individual of the age of majority and resides in the State of Illinois. Stanovich has served as BC Licensing's Senior Vice President of Franchise Leadership since June 2021.

18.    Upon information and belief, Cochran is an individual of the age of majority and resides in the State of Nevada. Cochran is Director of Operations for the Big Chicken brand.

19.    The true names and capacities, whether individual, corporate, associate, or otherwise, of the fictitious Defendants named as Does I-X and Roes I-X are unknown to Plaintiffs at this time. Upon information and belief, Plaintiffs allege that each such fictitious Defendant was in some way responsible for, participated in, or contributed to, or is otherwise legally responsible for

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

the events and happenings alleged in this Complaint. If and when Plaintiffs ascertains the above, they will seek leave to amend this Complaint to assert the true names and capacities of the fictitious Defendants and to join them in these proceedings.

**GENERAL ALLEGATIONS**

## I.    The Origin of Big Chicken

20.    Big Chicken is a fast-casual restaurant concept, which opened its first company-owned, non-franchised restaurant in 2018 in Las Vegas, Nevada.

21.    Big Chicken specializes in serving chicken breast sandwiches, along with various fried and grilled chicken dishes, milk shakes, and other similar offerings.

22.    Since its inception, Big Chicken representatives—including Halpern, Silverman, Stanovich and Cochran (collectively, "Individual Defendants")—have repeatedly represented, both publicly and privately, that the Big Chicken concept is owned and operated by three key foundational partners: JRS Hospitality, ABG, and O'Neal.

23.    For example, on its website, Big Chicken repeatedly touts its affiliation with JRS Hospitality, ABG, and O'Neal. Specifically, Big Chicken states in the "Franchise" section of its website that "[a]lthough we are an emerging chain, we are owned by giants[.]" https://www.bigchicken.com/franchise-information.

24.    Further, in the "About" section of its website, Big Chicken features a large picture of O'Neal holding Big Chicken menu items and states that: "Founded in 2018, Big Chicken is backed by a dream team of partners; JRS Hospitality, an accomplished Las Vegas-based ownership group; Authentic Brands Group, a multi-national, multi-billion-dollar brand development, marketing and entertainment company; and Hall of Fame basketball star Shaquille O'Neal." https://www.bigchicken.com/about.

## II.    Big Chicken Franchising

25.    In or around August 2021, after establishing and operating two Big Chicken stand-alone restaurants, Big Chicken announced the start of its franchise program.

26.    Upon information and belief, BC Licensing was formed to administer the Big Chicken restaurant franchise program.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

27. Upon information and belief, BC Licensing and each Individual Defendant played an integral role in developing Big Chicken's franchise program and/or marketing the Big Chicken franchise program to potential franchisees, developers, and/or investors.

28. Since 2021, BC Licensing has offered development rights to own and operate multiple Big Chicken locations in areas throughout the country, as well as individual license agreements to own and operate single locations.

29. BC Licensing obtains both initial and ongoing fees from franchisees and developers in exchange for the rights to own and operate Big Chicken locations.

30. As part of the franchising program, BC Licensing prepared a Big Chicken Franchise Disclosure Document (the "FDD"), which BC Licensing provides via electronic means to potential franchisees and developers and delivers the same via email.

31. The FDD includes various disclosures regarding the Big Chicken franchise concept.

32. The FDD also includes representations as to how integral O'Neal is to the Big Chicken brand, including a section on Big Chicken's "Manuals & Training Programs" with several images with O'Neal's image.

**III. 34 Franchise Group's Background and Interest in Big Chicken**

33. The individual Plaintiffs are experienced, multi-unit franchise operators.

34. Beginning in 2021, Plaintiffs began exploring the possibility of opening Big Chicken franchises. In connection with the same, also beginning in 2021, Halpern, Silverman, Stanovich, and Cochran, on behalf of BC Licensing, made a series of representations to Plaintiffs to both induce Plaintiffs to invest in the Big Chicken brand and for 34 Franchise Group to sign the Agreements and/or to prevent Plaintiffs from discovering that these misrepresentations were made.

35. As set forth below, all of these misrepresentations were intentionally false. Specifically, between the end of 2021, when Plaintiffs first spoke with Big Chicken representatives, and January 2022, when 34 Franchise Group executed the first of the Agreements referenced above, Defendants made a myriad of intentionally false statements to Plaintiffs.

36. Based on Defendants' knowingly false representations, as set forth in detail below, 34 Franchise Group signed the Development Agreement for the rights to develop fifty (50)

restaurants in the market and ultimately invested millions of dollars to pursue the same.

37. Pursuant to the Development Agreement, 34 Franchise Group also executed various License Agreements in connection with satisfying its development schedule.

38. Following the execution of the Agreements, Plaintiffs worked with Big Chicken's real estate manager to identify suitable locations and, after several months, secured leases for three (3) sites in Houston, one (1) in Fort Worth, and one (1) ground lease for a new drive-thru development.

39. Plaintiffs later discovered, only after the execution of the Agreements, however, that Defendants had made several egregious, material misrepresentations to Plaintiffs to induce their investment in this business venture, as set forth below.

**IV.** **The Initial In-Person Meeting with Big Chicken's Executive Team**

40. In October 2021, the individual Plaintiffs learned that Shaquille O'Neal had launched a new restaurant franchise called Big Chicken and was seeking franchisees to expand the concept nationally.

41. Shortly thereafter, Noordin Jhaver contacted Stanovich, the Senior Vice President of Franchising at Big Chicken, and arranged a meeting with the Big Chicken executive team in Las Vegas, Nevada and the individual Plaintiffs.

42. This meeting took place at a Big Chicken restaurant in Las Vegas, and included Halpern, Stanovich, Silverman and Cochran. The meeting also included then Executive Chef, Matthew Piekarski.

43. During this meeting, Halpern, Stanovich, Silverman and Cochran introduced Big Chicken as a "three-legged stool," explaining as follows:

    a. Shaquille O'Neal would serve as the celebrity brand ambassador;

    b. ABG, an international branding company, would handle all marketing efforts; and

    c. JRS Hospitality, a leading restaurant operations group, developed the overall concept.

44. Halpern, Stanovich, Silverman and Cochran also emphasized that Big Chicken was a "fast-casual" restaurant concept, focusing on a full-service bar and casual entertainment such as bar

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

games.  The oversized chickens were said to differentiate Big Chicken from its competitors.

45.    Furthermore, Halpern, Stanovich, Silverman and Cochran conveyed at this meeting that Shaquille O'Neal's celebrity influence had already helped secure advantageous deals with key suppliers for equipment, food, and packaging.

46.    Halpern specifically mentioned that Big Chicken had complete equipment and furniture packages ready for ten (10) restaurants, stored in a warehouse for immediate shipment.

47.    Halpern, Stanovich, Silverman and Cochran also conveyed to the individual Plaintiffs that Big Chicken's two existing corporate-owned restaurants were performing exceptionally well and generating strong sales with minimal marketing.  Specifically, they conveyed to the individual Plaintiffs that the California location was on pace to generate over $4 million in annual sales pre-COVID, while the Las Vegas store exceeded $3 million.

48.    Finally, Silverman expressly conveyed to the individual Plaintiffs that Costs of Goods and Services ("COGS") for a Big Chicken restaurant were at or below 30% of top line revenue.

49.    Plaintiffs relied on all of the above prior to executing the Agreements.  As set forth below, Plaintiffs would later discover these representations were intentionally false.

**V.    Shift in Brand Strategy and Discovery of Misrepresentations**

50.    Once Plaintiffs began to open and operate Big Chicken locations, Plaintiffs began to suspect that Defendants' representations made prior to the execution of the Agreements were false.

51.     In fact, at the first franchisee meeting that Plaintiffs attended in August 2023 in Las Vegas, Nevada, Big Chicken management announced significant changes to the concept, including: the elimination of the bar program (previously represented as critical to Big Chicken's corporate locations' success), a significant reduction of the restaurant footprint, and the encouragement of drive-thru service.

52.    These changes effectively transformed Big Chicken from a "fast-casual" model into a more traditional "fast food" model, which was the opposite of what Big Chicken had represented as the brand's "proven" model previously.

53.    By this time, Plaintiffs had already opened two locations, with three more in

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

permitting – all designed to the original specifications provided by Big Chicken.

54. When 34 Franchise Group representatives expressed concern to Cochran during this meeting regarding the complete change in direction to what had been represented as an established business model, Cochran advised these representatives that he would personally visit Plaintiffs' market to help promote bar sales and not to worry. Cochran never fulfilled this promise.

55. Ultimately, all locations that Plaintiffs opened suffered substantial losses, and Plaintiffs ultimately incurred millions of dollars in losses.

56. As set forth in more detail below, if Plaintiffs had known of Defendants' misrepresentations, Plaintiffs would not have invested any funds into this doomed venture.

**A.** **Misrepresentations Related to Big Chicken COGS**

57. Despite Silverman's representations otherwise, Plaintiffs learned – well after opening -- that food costs were nowhere near as represented by Silverman, and instead were well over 30%.

58. Big Chicken's excessive food costs created enormous operational challenges for Plaintiffs, because such astoundingly high costs are simply unsustainable, particularly for a new quick service restaurant concept looking to obtain a market share in an already competitive marketplace.

59. Had Plaintiffs known that this, and other misrepresentations, were not accurate, Plaintiffs would never have invested in this concept.

60. But that was not the end of Defendants' misrepresentations regarding costs. For example, Big Chicken's FDD also contains material misrepresentations regarding franchise costs.

61. Specifically, Item 7, titled "Estimated Initial Investment" provides that Opening Inventory should cost a franchisee between $15,000.00 and $20,000.00, with "Additional Funds" over three months ranging from $25,000.00 and $100,000.00.

62. These ranges are based on the intentionally low COGS verbally misrepresented to Plaintiffs and other potential franchisees, and are not based on any reasonable, good faith assessment of the true expected costs of operating a Big Chicken franchise.

63. More, in the FDD, BC Licensing represents that "[w]e rely on the general experience

BAILEY�❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

of our management with respect to restaurant operations and their experience owning and operating Big Chicken restaurants in compiling these Item 7 estimates." This statement is necessarily false, as the estimated costs are untethered to the actual costs of operating a Big Chicken franchise.

64.     Plaintiffs also learned, after execution of the Agreements, that Defendants had made the same material misrepresentations regarding costs to other franchisees and developers, who similarly relied on such representations and were unable to sustain restaurant operations based on actual costs incurred.

**B.     Misrepresentations Related to Big Chicken Corporate Location Sales**

65.     After the execution of the Agreements, Plaintiffs learned that the sales figures provided for the corporate-owned locations were intentionally false and were, in fact, significantly less than represented.

**C.     Misrepresentations Related to Big Chicken Marketing Support**

66.     Prior to the execution of the Agreements, the Individual Defendants, on behalf of BC Licensing, expressly represented that O'Neal was the public face and majority shareholder of Big Chicken, and that O'Neal would be intimately involved in marketing campaigns for the Big Chicken brand through his roles as a sports broadcaster and social media influencer, without any costs to Big Chicken.

67.     Further, Defendants touted ABG's involvement to entice Plaintiffs to enter into the Agreements.

68.     Indeed, during Plaintiffs' due diligence efforts and at several points in the parties' relationship thereafter, Defendants represented that ABG would be very involved in its marketing efforts. Defendants represented that Big Chicken's affiliation with ABG would increase the public exposure of the brand.

69.     However, Plaintiffs later learned after signing the Agreements that Big Chicken marketing had been virtually non-existent.

70.     Regarding O'Neal's involvement in marketing and promoting Big Chicken, Plaintiffs later discovered that Big Chicken had never teamed up with O'Neal's marketing team and that O'Neal had performed little to no promotion of the brand through his various media channels, which

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

contradicted the representations made to the Plaintiffs concerning O'Neal's involvement as the brand's majority shareholder.

71. Additionally, Plaintiffs discovered that ABG's involvement has been virtually non-existent, despite Defendants' representations to the contrary. ABG has not promoted its affiliation with Big Chicken and has not even included Big Chicken among its associated brands on its website.

**D.** **Misrepresentations Related to Equipment and Seating Packages for Franchisees**

72. The Individual Defendants, on behalf of BC Licensing, also represented that Big Chicken had complete equipment and furniture packages ready for ten restaurants, stored in a warehouse for immediate shipment.

73. However, contrary to the Individual Defendants' representations otherwise, there were no equipment or seating packages stored and ready for shipment for franchisees.

74. Indeed, Plaintiffs learned that Big Chicken had not even finalized its Point of Sale system, leading to costly delays. Material costs were also significantly higher than represented.

**E.** **Misrepresentations Related to Big Chicken's Operational Support**

75. Pursuant to Article XV(B)(1) of the License Agreements, BC Licensing agreed to provide regular consultation and advice to 34 Franchise Group for administrative and operational issues brought to its attention.

76. Nonetheless, BC Licensing failed to provide 34 Franchise Group with any advice concerning the numerous operational issues brought to its attention, including, but not limited to: (i) declining sales, (ii) excessive food costs; (iii) lack of marketing; and (iv) O'Neal's failure to participate in the brand.

77. BC Licensing's failure in this regard frustrated the purpose of the Agreements and caused Plaintiffs to incur significant damages.

78. Pursuant to Article XI, 34 Franchise Group dutifully paid 1% of its Gross Sales into the Brand Marketing Fund.

79. BC Licensing, however, failed to use such resources to engage in any significant local or national marketing campaigns.

80. BC Licensing has therefore unjustly enriched itself with its collection of marketing

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

fees that have not been utilized in any effective or appropriate manner.

81. Additionally, BC Licensing materially breached the Agreements by failing to utilize such Brand Marketing Funds for the Franchisee's benefit.

82. As a direct and proximate result of BC Licensing's wrongdoing, Plaintiffs have suffered millions of dollars of damages. Absent these material misrepresentations, Plaintiffs would never have invested in Big Chicken and entered into the Agreements.

**FIRST CLAIM FOR RELIEF**

**FRAUDULENT MISREPRESENTATION/INDUCEMENT**

**(Against Defendants)**

83. Plaintiffs incorporate each and every allegation set forth in Paragraphs 1 through 82, as if fully set forth herein.

84. As reflected above, Defendants knowingly made false and misleading representations of material fact in their statements to Plaintiffs regarding Big Chicken's food costs. Additionally, Defendants knowingly made false and misleading representations of material fact in their statements to Plaintiffs regarding the financial performance of existing corporate-owned Big Chicken restaurants, the involvement of O'Neal and ABG, the equipment or seating packages stored and ready for shipment for franchisees and granting franchise rights, as well as a host of other false promises and representations, that they knew to be false, as set forth above.

85. Defendants intentionally made the foregoing false and misleading affirmative misrepresentations to Plaintiffs in order to induce 34 Franchise Group to execute the Agreements, as set forth in more detail above, despite fully knowing that their representations were false and misleading.

86. Defendants made the foregoing false and misleading affirmative misrepresentations to Plaintiffs in order to deceive them into believing that a Big Chicken franchise was a viable franchise opportunity.

87. Plaintiffs reasonably and justifiably relied on Defendants' false and misleading representations regarding Big Chicken's food costs, the financial performance of existing corporate-owned Big Chicken restaurants, the involvement of O'Neal and ABG in marketing and promoting

Page **12** of **17**

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

the Big Chicken brand, the equipment or seating packages stored and ready for shipment for franchisees, Big Chicken's operational support as well as a host of other false promises and representations, in deciding to invest millions in furtherance of this endeavor.

88.     Had Plaintiffs known that Defendants made these false and misleading representations, 34 Franchise Group would never have executed the Agreements, and Plaintiffs would not have proceeded to lose millions of dollars in this failed investment.

89.     As a direct, proximate and foreseeable result of Defendants' fraudulent conduct, Plaintiffs have suffered substantial damages.

<u>**SECOND CLAIM FOR RELIEF**</u>

**NEGLIGENT MISREPRESENTATION**

**(Against Defendants)**

90.     Plaintiffs incorporate each and every allegation set forth in Paragraphs 1 through 89, as if fully set forth herein.

91.     As reflected above, Defendants failed to exercise reasonable care or competence in their statements to Plaintiffs regarding Big Chicken's food costs, the financial performance of existing corporate-owned Big Chicken restaurants, the involvement of O'Neal and ABG in marketing and promoting the Big Chicken brand, the equipment or seating packages stored and ready for shipment for franchisees, Big Chicken's operational support, as well as a host of other promises and representations, all of which were false.

92.     Plaintiffs reasonably and justifiably relied on Defendants' false and misleading representations regarding Big Chicken's food costs, the financial performance of existing corporate-owned Big Chicken restaurants, the involvement of O'Neal and ABG in marketing and promoting the Big Chicken brand, the equipment or seating packages stored and ready for shipment for franchisees, Big Chicken's operational support, as well as a host of other false promises and representations, in deciding to execute the Agreements.

93.     Had Plaintiffs known that Defendants made these false and misleading representations, 34 Franchise Group would never have executed the Agreements.

94.     As a direct, proximate and foreseeable result of Defendants' failure to exercise

reasonable care in making false and misleading representations to Plaintiffs, Plaintiffs have suffered substantial damages.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT

### (Against Defendants)

95.    Plaintiffs incorporate each and every allegation set forth in Paragraphs 1 through 94, as if fully set forth herein.

96.    As reflected above, Defendants knowingly made false and misleading representations of material fact in their statements to Plaintiffs regarding, among other things, Big Chicken's food costs, the financial performance of existing corporate-owned Big Chicken restaurants, the involvement of O'Neal and ABG in marketing and promoting the Big Chicken brand, the equipment or seating packages stored and ready for shipment for franchisees, Big Chicken's operational support, as well as a host of other false promises and representations, that they knew, or should have known, to be false in violation of NRS 598.0915(5) and (15) as well as NRS 598.0923(1)(b).

97.    Plaintiffs reasonably and justifiably relied on Defendants' false and misleading representations regarding Big Chicken's food costs, the financial performance of existing corporate-owned Big Chicken restaurants, the involvement of O'Neal and ABG in marketing and promoting the Big Chicken brand, the equipment or seating packages stored and ready for shipment for franchisees, Big Chicken's operational support, as well as a host of other false promises and representations, in deciding to execute the Agreements.

98.    Had Plaintiffs known that Defendants made these false and misleading representations, 34 Franchise Group would never have executed the Agreements.

99.    As a direct, proximate, and foreseeable result of Defendants' fraudulent conduct, Plaintiffs have suffered substantial damages.

### FOURTH CLAIM FOR RELIEF

### RESCISSION

### (Against BC Licensing)

100.    Plaintiffs incorporate each and every allegation set forth in Paragraphs 1 through 99,

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

as if fully set forth herein.

101.  As reflected above, the Individual Defendants, on behalf of BC Licensing, intentionally, or in the alternative, negligently, made false and misleading representations of material fact in their statements to Plaintiffs regarding Big Chicken's food costs, the financial performance of existing corporate-owned Big Chicken restaurants, O'Neal and ABG's involvement in marketing and promoting the Big Chicken brand, the equipment or seating packages stored and ready for shipment for franchisees, Big Chicken's operational support, as well as a host of other false promises and representations.

102.  Plaintiffs reasonably and justifiably relied on Defendants' false and misleading representations regarding Big Chicken's food and labor costs, the financial performance of existing corporate-owned Big Chicken restaurants, O'Neal and ABG's involvement in marketing and promoting the Big Chicken brand, the equipment or seating packages stored and ready for shipment for franchisees, Big Chicken's operational support, as well as a host of other false promises and representations, in deciding to execute the Agreements.

103.  Had Plaintiffs known that Defendants made these false and misleading representations, 34 Franchise Group would never have executed the Agreements.

104.  Upon learning of Defendants' false and misleading representations, Plaintiffs acted promptly to notify Defendants.

105.  As a direct, proximate, and foreseeable result of the Individual Defendants' fraudulent conduct on behalf of BC Licensing, 34 Franchise Group has suffered substantial damages and is entitled to rescind the Agreements.

**FIFTH CLAIM FOR RELIEF**

**IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against BC Licensing)**

106.  Plaintiffs incorporate each and every allegation set forth in Paragraphs 1 through 105, as if fully set forth herein.

107.  Under Nevada law, every contract contains an implied covenant of good faith and fair dealing; as such, implying a covenant of good faith and fair dealing presupposes the existence of a

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

contract.

108.    As reflected above, BC Licensing breached its duty of good faith and fair dealing by, among other things, intentionally, or in the alternative, negligently, making false and misleading representations of material fact in their statements to Plaintiffs regarding Big Chicken's food costs, the financial performance of existing corporate-owned Big Chicken restaurants, the involvement of O'Neal and ABG in marketing and promoting the Big Chicken brand, the equipment or seating packages stored and ready for shipment for franchisees, Big Chicken's operational support, as well as a host of other false promises and representations.

109.    Accordingly, Plaintiffs' justified expectations were denied.

110.    As a direct, proximate, and foreseeable result of BC Licensing's breach of its duty of good faith and fair dealing, Plaintiffs have suffered substantial damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    A judgment for rescission of the Agreements between 34 Franchise Group LLC and BC Licensing, LLC;

B.    A judgment awarding recovery of all monies tendered by Plaintiffs to BC Licensing, LLC in connection with 34 Franchise Group LLC's purchase of rights to develop fifty (50) "Big Chicken" restaurant franchises and all associated costs and investments related to this endeavor in a sum to be determined at trial;

C.    A judgment awarding actual and compensatory damages in favor of Plaintiffs and against Defendants in amounts to be proven at trial;

D.    Individual liability and damages against Joshua Halpern, Matthew Silverman, Samuel Stanovich and Brian Cochran as a result of their unlawful conduct;

E.    Attorneys' fees, costs and pre-judgment and post-judgment interest; and

F.    Such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## JURY DEMAND

Plaintiffs request a trial by jury as to all triable issues and claims.

DATED this 30th day of March, 2026.

BAILEY❖KENNEDY

By:  */s/ Joseph A. Liebman*
JOSEPH A. LIEBMAN
JAROD B. PENNIMAN

**CHIESA SHAHINIAN &
GIANTOMASI PC**
MARISA RAUCHWAY
*(PRO HAC VICE FORTHCOMING)*

*Attorneys for Plaintiffs 34 Franchise Group LLC,
Fazil Malik, Frank Malik, and Noordin Jhaver*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820